Rick ARMSTRONG, Edward Glenn Browning, Bonnie Collier, Cynthia L. Hix, Elliott Lee Hix, Jr., Les M. Landau, Pamela J. Landau, Kathryn Lockwood, Michael Lockwood, and Denise Treasure, Appellants,

v.

ADAIR COUNTY, MISSOURI, Respondent.

No. WD 55814.

Missouri Court of Appeals, Western District.

March 16, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1999.

Application to Transfer Denied June 1, 1999.

PER CURIAM.

In this declaratory judgment action, 10 Adair County taxpayers[1] asked the circuit court to declare that proceeds from a county sales tax approved on April 1, 1997, could not be used to build a new county jail and to declare that county commissioners violated the open meetings law. The circuit court ruled in favor of the county, and the appellants appeal. They contend that the circuit court's ruling, which will allow Adair County's commissioners to use the sales tax to build a new jail, was erroneous because it allows the commissioners to violate § 67.582, RSMo 1994. They also assert that the circuit court erred in dismissing their claim concerning the open meetings law as untimely because they had no way of knowing of the violations until the county commission announced its decision to use the tax funds to erect a new jail.

We reverse the circuit court's judgment in part and affirm it in part. We agree with appellants that using the new law enforcement sales tax to build a new detention center would violate § 67.582. The circuit court correctly rejected the appellants' open meetings challenge as untimely.

■ Acting on authority granted by § 67.582.1, Adair County's commissioners passed an order on January 21, 1997, which said:

> ... Be it Resolved that the County Commission of Adair County, Missouri, imposes a sales tax for law enforcement purposes at the rate of ½ of one percent (.005%) for providing law enforcement services within such County, ¼ of one percent to be set aside in a separate fund for future expansion of all the Dentention [sic] Center, to alleviate the present and future problem of having to board prisoners in other Counties; and provides for submission of the proposal to the qualified voters of the County for

---

Richard Wetzler, Prairie Village, for Appellant.

Jay Benson, Kirksville, for Respondent.

Before PAUL M. SPINDEN, Presiding Judge, EDWIN H. SMITH, Judge, and ALBERT A. RIEDERER, Judge.

**1.** They were Rick Armstrong, Edward Glenn Browning, Bonnie Collier, Cynthia L. Hix, Elliott Lee Hix, Jr., Les M. Landau, Pamela J. Landau, Kathryn Lockwood, Michael Lockwood, and Denise Treasure. We refer to them as appellants.

their approval at the Municipal Election[2] called and to be held in this County on April 1, 1997.

Section 67.582.5 mandates that "[e]xpenditures may be made from the fund for any law enforcement functions authorized in the ... order adopted by the [commissioners.]"

The circuit court found—and the county does not contest the finding—that the commissioners "intended on January 21, 1997, and intends now, that [they] will not use any of the funds from the tax to enlarge or renovate the current [jail]. Instead, the County plans ... to construct a new [jail] facility on a site separate and apart from ... the current Detention Center." The issue is whether the commissioners' using half of the law enforcement sales tax fund to build a new jail would violate § 67.582.5. The county acknowledges that the statute prohibits it from using the funds for any purpose not set out in its commissioners' order, but it argues alternatively that building a new jail either is subsumed within the term "expansion" or falls into the category of "law enforcement services."

We reject out of hand Adair County's proposition that provision for a new jail was subsumed within the order's use of the term "law enforcement services." Although building a new jail can be deemed, in the proper circumstances, to be subsumed within "law enforcement services," it is not in this case. The commissioners specifically mentioned the detention center and its expansion. A general principle of statutory construction provides that "the express mention of one thing implies the exclusion of another[.]" *Yellow Freight Systems, Inc. v. Mayor's Commission on Human Rights of City of Springfield,* 791 S.W.2d 382, 387 (Mo. banc 1990). The Supreme Court, in construing statutes, has noted that "'where ... special methods are expressly prescribed for the exercise of power, other ... procedures are excluded.'" *Id.* (quoting *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 166 (banc 1956)). Although this is a county commission order and not a statute, the same principle applies.

By referring specifically to future expansion of the detention center, the commissioners' proposition could have caused a cautious reader to conclude that "law enforcement services" referred to something other than services related to the detention center. Their express mention of expanding the jail implied exclusion of building a new jail from the term "law enforcement services." We, therefore, reject this argument.

This leaves the issue of whether erection of a new jail on a different site was subsumed within the term "future expansion." Expansion ordinarily means enlargement or growth. WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 798 (1971). Arguably, the commissioners could have intended—and, given their openness from the outset concerning their intention to build a new jail, apparently did intend—for "future expansion" to mean enlarging the jail by building a new one which is bigger than the present one. We reject this, however, as the proper interpretation of "future expansion" as used in this order.

■ We determine the intention of a governing body's order or ordinance by presuming that the body intended the plain and ordinary meaning of the words it used in its order or ordinance. *Mediq PRN Life Support Services, Inc. v. Abrams,* 899 S.W.2d 101, 110 (Mo.App. 1994). The plain and ordinary meaning of "expansion" does not connote enlarging a jail by building a new one on a different site which is bigger.

This becomes obvious in imagining a conversation between a husband and wife

---

**2.** The appellants do not make an issue of the commissioners' submitting the proposal to voters in a municipal election rather than, as required by § 67.582, "at a county or state general, primary or special election[.]"

contemplating what to do about their displeasure with their house's smallness. If the husband were to suggest that the couple *expand* their house, and the wife replied, "Yes, I agree; let's buy a lot and build our dream house," we would understand perfectly the husband's responding, "No, you misunderstood; I said *expand* our house, not build a new one." He would have intended for his wife to understand "expand" in its ordinary sense: to make the house they had bigger by extending some of its walls. We would not assume, as the wife apparently did, that the husband meant "expand" to mean making the house bigger by building a different one which was bigger than the one the couple already had. The wife was understanding the term in an extraordinary sense: Rather than expand the house they already had, to expand their living space by building a *different,* larger house.

Adair County's commissioners called for expansion of "the" detention center. They did not use language, which in its ordinary sense, would suggest building a *different* detention center. Hence, presuming the commissioners to have intended what the plain and ordinary meaning of their order's words suggested, the circuit court should have concluded that they intended to enlarge the existing jail—not build a new one.

Indeed, the Supreme Court has instructed, in a case involving construction of an ordinance authorizing a bond issue, that such acts "are to be strictly construed." *Meyers v. Kansas City,* 323 Mo. 200, 18 S.W.2d 900, 901 (banc 1929). A strict construction of the word "expansion" leads us to the same conclusion: that it means enlargement of the existing jail, not building a new one.

In the same case, the Supreme Court said that, when we consider such laws as the order at issue in this case, "if any doubt arises out of the use of the words employed, it is to be resolved in favor of the public and in limiting the expenditures of the appropriation to the *express terms*

for which it was made." *Id.* (emphasis added). Hence, we must restrict Adair County's commissioners to the express term it used, "expansion," and its plain and ordinary meaning. That excludes erection of a new jail.

Adair County insists that its commissioners intended from the very beginning to use the sales tax to build a new jail and that they were quite open about this with the voters. While we do not doubt that this was the case, we are perplexed as to why they would use the term "expansion," to describe what they wanted to do. We can envision reasonable scenarios in which the commissioners were thinking "build a new jail" but were saying "expand the jail." We cannot escape, however, the constrictors of law which bind the commissioners to the words they chose for their order. Such constrictors are necessary for orderly administration of government. We regret that the commissioners chose their words carelessly. We, nevertheless, must enforce § 67.582.5, and it requires that the commissioners' expenditures from the law enforcement sales tax fund be restricted to the functions listed by the commissioners in their order, and they did not list erection of a new detention center. We, therefore, reverse the circuit court's judgment on this issue.

 The appellants also accuse the circuit court of error in rejecting their complaint that Adair County's commissioners violated Chapter 610's statutes governing procedures of public governmental bodies' meetings. The circuit court agreed with the appellants that the commissioners violated the open meetings law by not posting a proper agenda. The circuit court, however, decided not to grant any relief to the appellants because (1) they did not file their lawsuit within six months of the commissioners' meeting or after announcement of an election and (2) the public interest in sustaining the validity of the action taken outweighed the public interest in enforcing the policy of the open meetings law. We

affirm the circuit court's judgment on this issue.

Section 610.027.4, RSMo 1994, says:

Upon a finding by a preponderance of the evidence that a public governmental body has violated any provision of sections 610.010 to 610.026, a court shall void any action taken in violation of sections 610.010 to 610.026, if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of sections 610.010 to 610.026 outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record, or vote. Suit for enforcement must be brought within six months from which the violation is ascertainable and in no event shall it be brought later than one year after the violation. This subsection shall not apply to an action taken regarding the issuance of bonds or other evidence of indebtedness of a public governmental body if a public hearing, election or public sale has been held regarding the bonds or evidence of indebtedness.

The appellants argue that they had no way of knowing that the commissioners had violated the open meetings law "until they officially learned that the County clearly intended to use the designated funds for building a new facility."

The appellants start their "clocks" at the wrong point. At the latest, the appellants should have been made aware of an unlawful meeting when the commissioners had the sample ballot published. This was, as the circuit court determined, on March 18, 1997. The circuit court correctly concluded, therefore, that the appellants did not file their complaint within the six-month deadline. This renders moot the circuit court's conclusion that the public interest in sustaining the validity of the action tak-

en outweighed enforcement of the open meetings law.[3]

We, therefore, affirm the circuit court's judgment concerning the appellants' complaint that Adair County's commissioners violated the open meetings law. We reverse the circuit court's judgment concerning the appellants' request for a declaration that the commissioners' use of funds in the law enforcement sales tax fund authorized by voters on April 1, 1997, to construct a new jail would violate § 67.582.

---

3. Even if the issue was not moot, the appellants' actual complaint does not concern the commissioners' unlawful meeting but the commissioners' decision to use the sales tax for a purpose not announced in their order and in the ballot question. The appellants' declaratory action, therefore, was the proper remedy for their complaint. The unlawful meeting is not truly germane to their complaint.